JAMES J. BURNETT, assignee, and others, appellants,

v.

THE MAYOR AND ALDERMEN OF JERSEY CITY and others, respondents.

A provision in a building contract that the contractor should not, without the written consent of the owner, assign any of the moneys payable thereunder, under penalty of forfeiture &c., is for the benefit and protection of the owner alone, against the dereliction or insolvency of the contractor, and if an installment of the moneys not yet due be assigned to materialmen, and notice thereof given to the owner without his exception, subsequent creditors of the contractor can derive no advantage therefrom.

*Mr. J. Flemming*, for appellants.

*Mr. F. McGee*, for respondents.

NOTE.—The brief of the respondents was not furnished to the reporter.—REP.

On appeal from a decree advised by Hon. Amzi Dodd, a special master, whose opinion follows:

THE MASTER:

The decree in this case having been advised by me, and an appeal taken therefrom, I have been called on for an opinion. The case involves many details which do not seem to me at all important to be stated. A public school-house was contracted to be built for the complainants, by Dittmar, in Jersey City. The contract was dated December 11th, 1876, and was filed in the county clerk's office before any work done or materials furnished. Dittmar agreed to do all the work and furnish all the materials, and to complete the building according to the specifications, for $31,125. He began the work a few days after the date of the contract, and finished it about November 1st, 1877. He became indebted, during the progress of the work, to the defendants, respectively, for materials, or else for work. On the 11th of June, 1877, or thereabouts, he was indebted to the firm of Dodge, Meigs & Co., in Jersey City, and also to the firm of Wightman & Brothers, in Newark, for materials furnished by both these firms and used in the building. By a written assignment of the date last named, Dittmar assigned to Dodge, Meigs & Co. the last payment or installment to be paid by the city under the contract, the amount being $5,125. The whole of this sum was not owing from Dittmar to Dodge, Meigs & Co., and on the 13th of August, Dittmar, in order to secure Wightman & Brothers their claim, gave them an order on Dodge, Meigs & Co. for all of said last installment over and above $2,500. This order was on the same day accepted by Dodge, Meigs & Co., payable by them when they should obtain the warrant. The whole of the last installment was not more than enough to pay the debts due to these two firms. Afterwards, several other creditors of Dittmar, who had done work or furnished materials in the building, put in their claims (or, perhaps I should say, allege that they did), by giving notice to the city,

under the third section of the mechanic's lien law, of the sums due them respectively, and of his refusal to pay. The city filed the present bill of interpleader and paid the fund into court. The first question controverted before me, was the question between the two firms named above on the one side, who claimed the whole fund under the assignment, and the other defendants on the other side, who claimed under their notices to the city. Inasmuch as I held that the assignees were entitled to take the fund as against the other defendants who relied on their notices, it did not become necessary to decide the disputed questions raised, as between the defendants themselves, who compose the second class of claimants. I advised that, as to the fund payable under the written contract, the same should be decreed to go to the assignees, and that, as to the amount of $425, which was due from the city for some extra work done to the school-house outside of the written contract, the same should be decreed to go to those who had done such extra work or furnished the materials for it. There was no dispute about the appropriation of the last-named sum, and I do not understand that any dispute about it will arise under the appeal. The questions between the defendants of the second class, that is, those who relied on their notices, related mainly to the legality of the different modes in which the several notices were served. They need not be adverted to.

The contract between the city and Dittmar provided that the contractor should not assign, by power of attorney or otherwise, any of the moneys payable under the agreement, unless by the consent of the board of public works, to be signified by endorsement thereon; and that, if the contract should be assigned otherwise than therein specified, the said board should have the power to notify the contractor to discontinue all work under the contract, and take the work into their own hands. It is out of this feature, or provision, of the contract, that the present controversy chiefly arises. It was contended, on behalf of the defend-

ants, relying on their statutory notices, that this provision of the contract against assigning any of the moneys, was one for their benefit; that being in the contract as filed, they had a right to rely on it, and because it is not asserted that any consent was endorsed or given by the board of public works, it results that the assignment to Dodge, Meigs & Co. was unwarranted, and of no effect as against such defendants. This contention does not seem to me to be one that can prevail. I think that the provision applies only to the city, and can be set up only by the city. The city had the right, if it chose so to do, to insist on the consequences mentioned in the contract—that is, to take the work out of Dittmar's hands, but it saw no reason to do this, and did not object, although it is shown by the proofs that the city clerk was notified that the transfer had been made, immediately after it was made. There is nothing whatever in the case to suggest any unfairness or defect of equitable rights on the part of the assignees. On the contrary, they gave full consideration for the debts due them from Dittmar, as full as that given by any of the other defendants. Their claims are in themselves as meritorious as the claims of the other defendants. Aside from the alleged prohibitory feature of the contract, it is not contended that Dittmar had not the legal right to assign. In the view which I have taken of the case, it is disposed of by what I have thus briefly said.

*Mr. J. Flemming*, for appellants.

I. The assignment to Dodge, Meigs & Co. was void as against the claimants under the notices under the lien law, who furnished material and did work in erecting the school building; because, in the contract between Dittmar and the mayor and aldermen of Jersey City, it was provided, " that Dittmar should not assign, by power of attorney or otherwise, any of the money payable under said agreement, unless by and with consent of board of public works, to be

Burnett *v.* Jersey City.  ·

signified by endorsements on the agreement." No consent to said assignment to Dodge, Meigs & Co. was given, and no consent thereto was endorsed on the contract, and no notice of said assignment was given until after the said claimants had done work and furnished material in erecting said school-house.

(*a*) No assignment could be made to Dodge, Meigs & Co. without consent ·of the board of public works. This was necessary, and such consent must be proved by Dodge, Meigs & Co, before an assignment could be valid as against. these creditors.

(*b*) This provision is not a restraint on alienation, but is analogous to a provision in a lease prohibiting assignment without the written consent of the landlord. These and similar provisions are upheld. *Taylor's Landlord and Tenant* § *402*.

(*c*) It is against policy to legalize this assignment. The school was for the public. No lien could attach to this building and land. A secret assignment would make the people a party to a possible fraud, and prevent the party working for the city from getting credit. So, the work would cost more, and the public be injured. *Story Eq. Jur. 1040*.

An assignment of contract in express violation of its terms, is void. *Grigg* v. *Landis, 4 C. E. Gr. 350*.

In some cases courts of equity will give effect to a collateral covenant, by refusing to decree a specific performance of the principal· contract in favor of the party who has obtained his interest in violation of a collateral covenant restraining assignment. *Grigg* v. *Landis, 6 C. E. Gr. 510*.

Here are reasons why the court should not give effect to this assignment:

(1) It is in violation of the covenant not to assign without consent.

(2) It is in violation of the provision that consent should be endorsed.

(3). It is in violation of the spirit of the lien law, that the parties may look to funds in the hands of the owner for payment.

(4) It makes the fraud possible. An owner may make a contract in writing, and file it in the county clerk's office. That frees the land from lien. The builder may then assign payments, and that clears the fund in the owner's hand from claims under third section, by parties furnishing material or doing work.

These and other reasons bring this case within the ruling of the chancellor in *Grigg* v. *Landis*, and furnish the exception to the rule on which the court reversed.

One design of requiring the contract to be filed, is to apprise mechanics and others to what extent the building is exempt from lien, and how far they must look to the builder alone for payment. *Ayres* v. *Revere, 1 Dutch. 474, 479; Mechanics Loan Ass'n* v. *Albertson, 8 C. E. Gr. 319.*

II. The assignment to Dodge, Meigs & Co., was for money to come due in the future, for the work and material of these claimants, and is void as against these claimants, furnishing material and doing work without notice of it.

III. At the time of the alleged assignment to Dodge, Meigs & Co., there was no money due to them for material furnished on school-house.

IV. There never became due to Dodge, Meigs & Co. the sum of $5,125, and the assignment to them was not for the whole of the money to become due from Dittmar, but only a part ($2,500).

Serving notice for more than is due, is fatal to the claim. *Reeve* v. *Elmendorf, 9 Vr. 132.*

An order which only carries a part of a fund, does not amount to an assignment of that part, or give a lien against the drawee, unless he consent to the appropriation by acceptances of the draft. *Mandeville* v. *Welch, 5 Wheat. 277; Tieman* v. *Jackson, 5 Pet. 580; Hopkins* v. *Beebe, 2 Casey 85; Adams* v. *Claxton, 6 Ves. 231.*

V. The assignment to Dodge, Meigs & Co. was on a secret understanding that they were to retain for Dittmar $2,500, and ought not to be enforced against these appellants and the lien claim creditors.

VI. The assignment to Dodge, Meigs & Co. was only of a part of the last payment to become due to Dittmar, and, if enforced, should be confined to that.

VII. But the assignment of the contract, or any payment thereunder, by Dittmar to Dodge, Meigs & Co., was fraudulent, and calculated to hinder, delay and defraud creditors.

(*a*) The evidence shows " *badges of fraud*," which should preclude a recovery by both Dodge, Meigs & Co., and their beneficiary, Wightman & Brothers.

(*b*) As to secrecy and concealment, see *Bump on Fraud. Convey. pp. 81, 84, 86 ; Cummins* v. *Little, 1 C. E. Gr. 48 ; Marlatt* v. *Warwick, 3 C. E. Gr. 108 ; Hodgson* v. *Farrel, 2 McCart. 88 ; Wintermute* v. *Snyder, 2 Gr. Ch. 490 ; Scott* v. *Hartman, 11 C. E. Gr. 89.*

VIII. Dodge, Meigs & Co. and Wightman & Brothers are chargeable with *notice* of fraud.

(*a*) Although a purchaser of property transferred by a debtor to defraud his creditors, pay full consideration and have no notice that the property is transferred to him for that purpose, yet if, from the circumstances, he must have inferred that such was the object, the sale will be set aside as against a creditor. *Green* v. *Tantum, 4 C. E. Gr. 105.*

(*b*) If a purchaser has before him facts which should put him on inquiry, it is equivalent to notice of the fact in question, and where such fact constitutes a fraud on a third party, it will not protect the purchaser that he purchased for value. *Green* v. *Tantum, 6 C. E. Gr. 364.*

(*c*) *De Witt* v. *Van Sickle, 2 Stew. 209,* held, that "A person who willfully closes his eyes to avoid seeing what he believes he would see if he kept them open, must be con-

sidered to have seen what any man with his eyes open would have seen."

IX. This assignment to Dodge, Meigs & Co., if not fraudulent in its entirety, is fraudulent as to the excess over the interest of Dodge, Meigs & Co., if anything. *Bump on Fraud. Convey. p. 303; Morris Canal & Bank'g Co.* v. *Stearns*, 8 *C. E. Gr. 414*, *427*, 9 *C. E. Gr. 588; Jones* v. *Adams, 8 C. E. Gr. 113; Demarest* v. *Terhune, 3 C. E. Gr. 532; Coley* v. *Coley, 1 McCart. 350.*

X. The order given by Dittmar on Dodge, Meigs & Co., in favor of Wightman, for the excess over $2,500, had nothing to operate upon. Dodge, Meigs & Co. did not have the money, were not entitled to receive it, and their acceptance of the order was only conditional.

(*a*) Wightman could acquire no equitable lien upon the fund in the city's keeping until the city had been duly notified of the assignment and had accepted it, so as to complete the privity of contract and the appropriation of the money. *Piernan* v. *Jackson, 5 Pet. 580; Williams* v. *Everett, 14 East 582; Grant* v. *Austin, 3 Price. 58.*

XI. The assignment of a chose in action is not complete until notice is given to the debtor; and until such notice, the property remains in the assignor, and is liable for his debts. *Woodbridge* v. *Perkins, 3 Day 364; Judah* v. *Judd, 5 Day 534; Vanbuskirk* v. *Ins. Co., 14 Conn. 141; Wood* v. *Partridge, 11 Mass. 491; Loomis* v. *Loomis, 25 Vt. 198; Richards* v. *Griggs, 16 Mo. 416; Blin* v. *Price, 20 Vt. 25; Baron* v. *Porter, 44 Vt. 587; 2 Story's Eq. Jur. 376 § 1048; Id. 387 § 1057.*

XII. This court ought not to permit Dodge, Meigs & Co. and Wightman & Brothers to be paid, because the money to pay them on their assignments came out of the material and labor of these appellants, furnished in the erection of said school building, and the concealment or want of notice of such assignments by said Dodge, Meigs and Co. and Wightman Brothers was a fraud on these appellants, who

furnished material and did work on the strength of the presumed liability of the city to pay these claimants the amount due them on notice under the lien law.

XIII. The foregoing points raise the objections to decree in favor of Dodge, Meigs & Co. and Wightman Brothers, under the assignments. We claim that neither Dodge, Meigs & Co. nor Wightman Brothers are entitled to a decree for anything as claimants under the third section of mechanics lien act; neither of them served notices under said act.

(a) Dodge served the assignment on city clerk, October 9th.

(b) This is not a notice under the lien law; on the contrary, it claims against it.

(c) Wightman Brothers served no notice under lien law; they claim only under Dodge, Meigs & Co.

XIV. Cornelius Zabriskie claims under an assignment of extra work, and the same objections apply to his claim as to those of Dodge, Meigs & Co. and Wightmans.

XV. Meyer & Martin are entitled to no preference over the other claimants under the lien law, and their notice was served after that of appellants.

XVI. Notice under third section of the lien law operates as an assignment of the debt due the contractor, under contract. *Wightman* v. *Brenner, 11 C. E. Gr. 489.*

Act to secure to mechanics and others payment for their labor and materials in erecting any building. *Rev. 668,* §§ *1–4, et seq.*

The claimants who served notices under the lien law are entitled to be paid, out of the money in court, the several sums due to them.

(1) In the order in which the notices were served.

(2) Or, *pro rata,* as to amount of claim, and sum out of which it is to be paid.

(a) The first is in accordance with the decisions.

(b) The second follows the spirit of the lien law.

XVII. To the contract forbidding the assignment of moneys due on the contract without the consent of the board of works, the same rule must be applied in equity as in law, or equity must follow the law, and the assignments to Dodge, Meigs & Co., and Wightman Bros., are void, because no consent or acceptance of the board of works was given to such assignment.   *Crocker* v. *Whitney, 10 Mass. 316 ; Mowry* v. *Todd, 12 Mass. 281 ; Barrett* v. *Union Ins. Co., 7 Cush. 175 ; Tibbetts* v. *George, 5 Ad. & E. 115 ; Stiles* v. *Farrar, 18 Vt. 444 ; Smith* v. *Berry, 18 Me. 122 ; Mandeville* v. *Welch, 5 Wheat. 277.*

The opinion of the court was delivered by

GREEN, J.

The parties contestant in this cause were defendants, in the court below, to a bill of interpleader, filed by the mayor and aldermen of Jersey City, for the purpose of settling and adjusting the respective claims of the parties to the money due from the complainants to Adam J. Dittmar, for the erection of a public school-house in Jersey City. The building was erected under a written contract, duly filed in the county clerk's office before the commencement of the work, and was finished by the contractor according to the specifications, and accepted by the board of public works of the city. At the time of its completion, there remained due from the city the sum of $5,125, being the last payment under the contract, and the further sum of $425 for extra work and materials used in the erection of a stoop, ordered by the city and not included in the agreement.

During the progress of the work, Dittmar became indebted to various parties, for labor performed and materials furnished for the erection of the building, and, on June 11th, 1877, he assigned to Dodge, Meigs & Co. all his right, title and interest in the last payment to become due to him by virtue of the contract, notice of which assign-

ment was acknowledged by the city clerk on August 4th, 1877. The purpose of the above assignment was to secure to Dodge, Meigs & Co. the payment of $2,500 for materials furnished, and to be furnished, by them to Dittmar. On August 13th, Dittmar, in order to secure to Wightman & Brothers their claim for labor and materials, drew an order in their favor on Dodge, Meigs & Co., for the balance of the said last payment over and above $2,500, which order was accepted on the same day by Dodge, Meigs & Co., payable when the warrant for $5,125 was obtained by them. On September 1st following, Dittmar transferred to Cornelius Zabriskie the warrant for the money due from the city for the extra work. Subsequent to these assignments, several creditors of Dittmar, who had furnished labor and materials for the school building, served notices on the city authorities for the amount of their respective claims, pursuant to the third section of the mechanics lien law (*Rev. p. 668*). The money was paid into court by the complainants on filing their bill of interpleader, and the cause, when at issue, was referred to one of the advisory masters of the court to hear and determine.

It was not disputed, on the hearing before the master, nor in this court, but that the bill of interpleader was properly filed, and that the complainants are entitled to their costs out of the fund. The real controversy is between the creditors who attempted to secure their claims by demand and notice under the lien law, on one side, and the firms of Dodge, Meigs & Co. and Wightman & Brothers, who claim under the assignments from Dittmar, on the other.

The assignments being all prior in point of time to the giving of the notices under the lien law, the fund, after payment of the complainants' costs, was adjudged, in the court of chancery, to the assignees of Dittmar, according to their respective priorities. The decision of the master is in accordance with well-settled and repeated adjudications in the courts of this state, and with the decision of this court in *Craig* v. *Smith, 8 Vr. 549.* From this decree the appel-

lants bring their appeal, and contend that they should be paid the amount due them on their notices under the lien law, in preference to the respondents.   They insist that the assignments of the fund by Dittmar were void as against them, upon two grounds: First—Because they are in violation of the contract between Dittmar and the city.   Second— Because they are fraudulent and against the policy of the lien law.

The contract for the erection of the building contained a provision that the contractor should not, by power of attorney or otherwise, assign any of the moneys payable under the agreement, unless by and with the assent of the board of public works, to be signified by endorsement upon the agreement, and that, if the contract should be assigned otherwise than as therein specified, the board should have the power to notify the contractor to discontinue all work under the contract, and also power to complete the work themselves, at the contractor's expense, the cost to be deducted out of the moneys due or to become due to him under the agreement.   It is alleged that the express consent of the board of works was not given or endorsed on the agreement pursuant to its provisions, but, if true, the omission cannot avail the appellants or avoid the claims of the respondents under the assignment.   The covenant and the penalty for its violation were evidently designed for the protection of the city against the dereliction or insolvency of the contractor.   The appellants had no interest in it, no right to demand its fulfillment, and were entitled to no indemnity for its violation.·

The assignment was not void, even as against the city, but voidable *pro tanto* only.   The board of works could not deprive the assignees of their rights under it.   If deemed proper, they could protect the interests of the city by taking charge of the work and appropriating the money on hand to its completion.   In such case, the surplus, if any, after deducting the money so expended, was expressly payable to Dittmar, and would pass to his assignees.   But the

Burnett v. Jersey City.

city had a clear right to waive the enforcement of a provision in the contract inserted for its special benefit, and did so, by omitting to give the required notice to the contractor, and permitting him to continue the work, as well as by bringing the fund into court and consenting to its distribution.

The second ground relied upon by the appellants is equally untenable. No actual fraud is alleged or attempted to be proved in the case. The claims of both parties are equally just and meritorious. No unfair advantage was taken by the respondents. Dittmar was largely in their debt. He wanted further credit for a large amount of lumber to finish the school building, and proposed to assign the last payment on the contract as security for both the new, and part of the old, indebtedness. They had the right to require security for the payment of their claims, and, as diligent creditors, they exercised the right. There was nothing in the case to preclude Dittmar's undoubted right to prefer any just creditors, and to secure their claims by assignment. Neither the giving nor obtaining of an honest preference allowed by law, can be evidence of fraud or of an attempt to hinder, delay and defraud creditors.

The allegation of undue concealment of the assignment by Dodge, Meigs & Co., to the prejudice of the appellants, is not sustained by the proofs. Notice of the assignment was given to the city clerk prior to August 4th, 1877, and Norman Dodge testifies that it was mentioned to several persons; that they made no secret of it, and did not attempt to conceal it. The further objections (that the assignment was made to secure future advances; that an assignment of part only of a fund gives no interest in the fund without the assent of the debtor, and that the assignment is contrary to the spirit and policy of the lien law), cannot prevail. A mortgage or assignment to secure future advances is held to be good in equity, and in this case the lumber was delivered at once, before the rights of the appellants intervened. The two latter objections are disposed of by the reasoning

Burnett *v.* Jersey City.

of the court in *Superintendent of Public Schools* v. *Heath*, *2 McCart. 23.* See, also, *Phillips on Mechanics Lien § 256.*

It is further contended, that the assignment of a chose in action is not complete until notice is given to the debtor, and that, as no notice of the order in favor of Wightman & Brothers was given to the city, that firm acquired no equitable lien upon the fund in the city's hands. But the order in favor of the Wightmans was drawn, not on the city, but on Dodge, Meigs & Co., to whom the assignment of the whole debt was made, and who were entitled, at law, to receive and receipt for the whole amount. Upon the acceptance of the order by the last-named firm, they became trustees for the Wightmans, to the extent of their interest. On the 20th of September, after the acceptance of the order, and before other claims intervened, a second notice of the assignment to Dodge, Meigs & Co. was filed with the city clerk. This clearly inured to the benefit of Wightman & Brothers, and perfected their equitable lien upon the fund. A notice from the Wightmans to the city could have been of no practical benefit. Both the debtor and creditors of Dittmar were apprised that he had parted with all his interest in the fund, and that the assignees were entitled to receive the money.

It is urged, as a last ground for reversing this decree, that it directs that the money due under the contract, and that due for extra work, should be treated as distinct funds, and be separately disbursed. In principle, there is no distinction between the funds; none is made by the lien law, and, ordinarily, the whole should be treated as one fund, and be disbursed among all the claimants, according to the provisions of the law. But the decree expressly states that the two funds should, for the purposes of *this case*, be treated as distinct sums, and be separately disbursed. The decision and decree are confined to the case in hand, and are clearly right. The two funds were separately assigned by Dittmar, at different times, to different parties, and to secure different claims. To blend them again would be manifestly erroneous. The decree in favor of Zabriskie, to

whom the assignment was made, and whose claim absorbed the larger part of the fund, cannot be questioned. The balance (about $100) was directed to be paid to Mayer & Martin, on account of their bill for extra work. The master states that the appropriation of the money due for extra work was not disputed by any of the parties at the trial, and may be considered as made by consent. The decree should be affirmed, with costs.

Decree unanimously affirmed.