UNITED STATES FIDELITY AND GUARANTY COMPANY

*v.*

CITY OF NEWARK et al.

[Submitted July 21st, 1909.   Decided July 29th, 1909.]

1. Notice to the city of the assignment of a contractor's claim against it for money due under the contract was not essential to the validity of the assignment as against a subcontractor's lien subsequently filed under the Municipalities Lien Law act of March 30th, 1892 (*P. L. 1892 p. 369*), the statutory lien having only the effect of an attachment lien, and the lienor being in no better position than the debtor.

2. The board of street and water commissioners of a city of the first class being a joint party with the city to a contract for the construction of a reservoir, and having supervision of its performance, and power to draw upon the city for payment therefor under act of March 28th, 1891 (*P. L. 1891 p. 249*), notice to it of the assignment by the contractor of money due under the contract by its adoption of a resolution permitting the assignment and notice to the mayor who approved such resolution was notice to the city.

3. The consent of the city to the assignment by a contractor of money due under the contract was not essential to the validity of the assignment as against the subsequent statutory liens of subcontractors, notwithstanding a provision in the contractor's contract with the city prohibiting an assignment without the city's consent; such provision being for the city's protection and not for the benefit of subcontractors, &c.

4. A provision in a subcontract that it was made with reference to the contractor's contract with the city, which applied to the subcontract, except where otherwise provided therein, could not be invoked in an action by the subcontractor against the city to enforce a statutory lien; the city not being a party to the subcontract, and its rights not being affected thereby.

5. When a subcontractor sued a city to establish a statutory lien without knowledge of the contractor's assignment of the money due it under the contract, costs will only be allowed the intervening assignees from the filing of the answer upon judgment for them.

On final hearing. On bill, answer, replication and proofs.

*Messrs. McCarter & English,* for the complainant.

*Mr. Sherrerd Depue,* for James C. Stewart et al.

*Mr. Michael Dunn* and *Mr. Charles B. Dunn,* for the Empire Granite Company.

*Mr. Herbert Boggs,* for the city of Newark.

HOWELL, V. C.

The parties to this suit are before the court under the provisions of the Municipalities Lien law. *P. L. 1892 p. 369.* Stewart & Abbot made a contract with the city of Newark for the construction of the Cedar Grove reservoir. James Seme made a subcontract with Stewart & Abbot for the performance of a portion of the work. The complainant, a corporation engaged in the surety business, became surety to Stewart & Abbot for the performance by Seme of the provisions of his subcontract. The bond or instrument of suretyship contained this clause:

"Second; that in case of such default on the part of the principal, the surety shall have the right, if it so desires, to assume and complete or procure the completion of said contract; and in case of such default, the surety shall be subrogated and entitled to all the rights and properties of the Principal arising out of the said contract and otherwise, including all securities and indemnities theretofore received by the Obligee, and all deferred payments, retained percentages and credits, due to the Principal, at the time of such default, or to become due thereafter by the terms and dates of the contract."·

Seme failed to perform his subcontract, and the same was completed by the surety company. After its completion, and on December 12th, 1904, it filed a lien under the Municipalities

Lien law against the fund in the custody of the city of Newark arising out of the Stewart & Abbot contract for $35,200.21, and on March 9th, 1905, brought suit thereon in this court for the foreclosure thereof.

The Empire State Granite Company, claiming to have furnished materials for the performance of the Stewart & Abbot contract, on March 3d, 1905, filed a similar lien for $2,136.48. Suit was brought thereon by it on May 31st, 1905. I do not find that these two suits were ever consolidated. They were, however, heard together on the question hereinafter discussed. It was admitted by the city of Newark that there were in its treasury sufficient funds to pay both these claims if no other right had intervened.

It now appears that prior to the filing of either of the said liens, and on November 18th, 1904, Stewart & Abbot, the original contractors, by writing, made an assignment to Alexander M. Stewart and James C. Stewart, strangers to the contract, of any and all moneys due and to become due to said Stewart & Abbot from the city of Newark thereunder for work done and materials furnished therefor and in execution of the same. The assignment contained the usual powers relating to the collection of the amount assigned. The controversy relates to the priorities between the said assignment and the said liens, the assignees claiming priority by reason of the prior execution and delivery of the instrument of assignment. No question is raised as to the consideration for the assignment. It was treated by counsel as a transfer upon full and adequate consideration and without any suspicion of fraud. When the assignment was made permission was sought to the making of it from the city of Newark for the reason that the Stewart & Abbot contract contained the following provisions:

"SUBLETTING.

"The contractor agrees that he will give his personal attention to the fulfillment of this contract; and that he will not assign or sublet the aforesaid work, or any part thereof, but will keep the same under his personal control, and that he will not assign by power of attorney or otherwise, any of the moneys payable under this agreement unless by and with the previous consent in writing of the Board of Street and Water commissioners signified by resolution of said Board."

"Payments.

"* * * At the end of one year the said ten per centum or such portion of it as may remain after making said repairs or remedying any defects, shall be paid to the contractor, after the party of the second part shall furnish the said Board of Street and Water commissioners with satisfactory evidence that all persons who have done work or furnished materials under this agreement, and who may have therefore given written notice to said Board of any balance unpaid for work or materials furnished or done on said work have been fully paid or satisfactorily secured. And in case such evidence is not furnished as aforesaid, such amounts as may be necessary to meet the claims of the persons aforesaid may be retained from the money due the party of the second part under this agreement until the liabilities aforesaid shall be fully discharged or such notice withdrawn."

The city of Newark, by the board of street and water commissioners, the board having charge of the work under the Stewart & Abbot contract, did consent to the said assignment. This consent was contained in a resolution of that board which was adopted on November 17th, 1904, and approved by the mayor of the city on the following day. This resolution was as follows:

"*Resolved*, That the consent of the Board of Street and Water Commissioners for the city of Newark, be and the same is hereby given to the assignment by Stewart & Abbot, contractors for the construction of the Cedar Grove reservoir, of all the moneys due and to become due under their contract with the city of Newark for work done and materials furnished under the said contract, and in execution of the same, to Alexander M. Stewart and James C. Stewart, upon obtaining and filing with the Clerk of this Board the consent in writing of the American Surety Company, surety for the performance by the said Stewart & Abbot of their said contract and further upon their complying fully with such other conditions as the city counsel may require to fully protect the interests of the city in the premises."

On the day on which this resolution was approved by the mayor, viz., November 18th, 1904, Stewart & Abbot joined with the assignees, Alexander M. Stewart and James C. Stewart, in a bond to the city of Newark to indemnify the city against loss or damage for having given such consent; the surety company gave its consent on November 28th, 1904. These various documents were transmitted to the city auditor and he was notified by the city counsel by letter on December 14th, 1904, that all the con-

ditions which had been imposed by him in pursuance of the resolution of the board of street and water commissioners had been complied with fully. The defendants Alexander M. Stewart and James C. Stewart, assignees, claim that the assignment of the Stewart & Abbot funds to them took effect on the day of the date and delivery of the instrument of assignment, and that if any notice of the assignment to the city of Newark was necessary, such notice was given prior to the filing of the complainant's lien, and that notice must be implied from the above recited resolution of the board of street and water commissioners approved by the mayor not later than November 18th, 1904. The complainant claims that notice to the city was essential to the validity of the assignment, and that such notice cannot be said to have been given until December 14th, 1904, that being the date when the city counsel notified the city auditor that all his requirements had been met, this being based upon the complainant's construction of the provisions of the Stewart & Abbot contract above recited, and such construction being that no valid assignment of the Stewart & Abbot fund could be made without the consent of the city.

From the foregoing facts I conclude: *First,* that the assignment took effect from the date of its execution and delivery; *second,* that no notice to the city was necessary to constitute the assignment a valid transfer of the fund; *third,* that the lien claimants are not in the position of *bona fide* purchasers without notice for value, and do not take priority over the assignment; *fourth,* that the consent of the city to the assignment was not necessary to give it force and validity. The authorities for these propositions are as follows: In *Board of Education* v. *Deparquet, 50 N. J. Eq. (5 Dick.) 234,* the facts were similar to those in this case. There the contest was between an assignee of a fund arising out of a building contract and divers creditors of the contractor. The assignment was made in February, 1887. The lienors claimed under an attachment issued out of the Monmouth circuit court in March of the same year. Vice-Chancellor Pitney discusses the question of the priorities at length and with great learning, and decides that the assignment which was prior in point of execution and delivery took precedence over the latter

attachment; that notice thereof to the debtor was not necessary to its validity and that the attaching creditor did not occupy the position of a *bona fide* purchaser without notice, and that he had no better title than the debtor himself had. This case was mentioned with approval by the court of errors and appeals in *Miller* v. *Stockton, 64 N. J. Law (35 Vr.) 614;* and again in *Cogan* v. *Conover Manufacturing Co., 69 N. J. Eq. (3 Robb.) 809,* and may, therefore, be taken as an expression of the law of this state. The same doctrine was previously announced by Vice-Chancellor Green in *Bank of Harlem* v. *Bayonne, 48 N. J. Eq. (3 Dick.) 246.* In fact, the rule was announced by this court in an opinion by Chancellor Vroom, in 1834, in *King* v. *Berry, 3 N. J. Eq. (2 Gr. Ch.) 44,* and by Chancellor Green, sitting as ordinary, in 1864, in the case of *Kennedy* v. *Parke, 17 N. J. Eq. (2 C. E. Gr.) 415.* The office of notice of assignment to the debtor or depository is discussed by Mr. Justice Lippincott in *Miller* v. *Stockton, supra.*

The conclusion reached is not singular. We find the same rule in Pennsylvania, *Noble* v. *Thompson Oil Co., 79 Pa. St. 354;* in New York, *Williams* v. *Ingersoll, 89 N. Y. 508;* and in Massachusetts, *Thayer* v. *Daniels, 113 Mass. 129.* There appears to be no distinction on principle or in the authorities between the lien created by the statutory action of attachment and the lien created by the statutory provisions of the Municipalities Lien law. Although created by different proceedings the character of the charge upon the property in the hands of the debtor is the same.

While I do not think that notice to the city was essential to the validity of the assignment, yet if such notice were necessary knowledge of all the facts must be implied from the resolution of the board of street and water commissioners of November 17th, 1904. That board was a party to the Stewart & Abbot contract jointly with the city of Newark, and by the law of its creation (*P. L. 1891 p. 249*), became the executive board having supervision of the performance of the contract. and the power of drawing upon the city treasury for money to pay what was earned thereunder. Surely a notice to this board would be notice to the city, but the defendants may go further. The

resolution was approved by the mayor, who is the chief executive officer of the city, and knowledge communicated to him in the performance of one of his official acts would undoubtedly be notice to the city.

·Nor do I think that the consent of the city was necessary to effectuate the transfer. The contract of the city was obtained by a very formal proceeding, viz., the passage of a resolution by the board of street and water commissioners and its approval by the mayor. This was supposed to be necessary in view of the provisions hereinabove quoted from the Stewart & Abbot contract. It has, however, been held in many cases in this state that provisions of that character are inserted in contracts, not for the benefit of the contractor, subcontractors or materialmen, but for the protection of the city. Vice-Chancellor Van Fleet so held in *Shannon* v. *Hoboken, 37 N. J. Eq. (10 Stew.) 123; affirmed, Id. 318,* and also in *Essex Freeholders* v. *Lindsley, 41 N. J. Eq. (14 Stew.) 189.* In *Bank* v. *Bayonne, supra,* it was expressly held that a provision of that character did not invalidate an assignment of the money earned under the contract. In *Burnett* v. *Jersey City, 31 N. J. Eq. (4 Stew.) 341,* the restrictive words were the same as those in the contract under discussion.

In this case the city of Newark, by the use of the paragraph referred to, assumed no obligation; it did not agree that it would protect the subcontractors or materialmen; there is no duty cast upon the municipality in favor of any person; it was not a contract for the benefit of anyone upon which an action at law could have been brought. The protection of the municipality was all that was contemplated.

The subcontract between Stewart & Abbot and Seme contains this provision:

"It is also expressly understood that this present contract is made with full knowledge of both the parties hereto with reference to said contract between Stewart & Abbot and the city of Newark, and that a copy of said contract ánd said specifications has been presented to said Seme, and that he has read the same and fully understands all the requirements thereof, and that each and every of the terms and provisions of said last mentioned contract so far as applicable to the work herein contemplated shall apply to and control this contract, except where provision is otherwise made in this agreement."

It was urged on the part of the complainant that by these words all the terms of the Stewart & Abbot contract, so far as they were applicable to the Seme contract, were imported into the Seme contract and became part thereof, and that thereby Seme's creditors obtained a footing which they otherwise might not have had. I am not able to perceive that the connection between these contracts in any way affects the status of either debtor or creditor. Whatever design may have actuated the parties in making the Stewart & Abbot contract a part of the Seme contract is not disclosed, but certainly the city of Newark, the debtor, was not a party to the Seme contract, and its rights are not affected by any provision contained in it.

These views lead to a decree in favor of the assignees, Alexander M. Stewart and James C. Stewart, but inasmuch as the complainant filed its claim and prosecuted it in ignorance of the assignment, costs will be allowed only after the filing of the answer.