In this cause complainant, Bridgeton National Bank, will be referred to as "Bridgeton Bank;" the defendant Commercial Casualty Insurance Company, as "Commercial;" the defendant Eastern States Construction Company, Incorporated, as "Eastern States."
Bridgeton Bank seeks a decree against Commercial in the sum of $7,307.41, with interest, the amount claimed to be in the hands of Commercial, assigned to Bridgeton Bank by Eastern States. Eastern States, a New Jersey corporation, was engaged in the business of road building, and on April 13th, 1928, made a written application and agreement with Commercial for the purpose of having Commercial become surety on a bond dated April 14th, 1928, from Eastern States as principal and Commercial as surety to the Commonwealth of Pennsylvania as obligee, required by the written agreement entered into between Eastern States and said Commonwealth of Pennsylvania bearing same date, and relating among other things to the building of a road, which may be referred to as the "Clarion and Venango contract."
Subsequently, on September 22d 1928, Eastern States made another written application and agreement with Commercial and a bond was executed to the Commonwealth of Pennsylvania in accordance with the written agreement relating to the building of a road referred to as "Vernon and Hayfield contract;" and on March 18th, 1929, another written application and agreement was entered into by Eastern States and Commercial, and on March 22d 1929, Eastern States as principal and Commercial as surety executed a bond to the Commonwealth of Pennsylvania in accordance *Page 373 
with agreement bearing same date, relating among other things to the building of a road referred to as "West Meade township contract."
On August 2d 1929, Eastern States owed bills for labor and materials furnished in connection with the Clarion and Venango contract aggregating $15,593.10, which bills were afterward paid by Eastern States by checks dated September 5th, 1929.
On August 2d 1929, Eastern States wrote a letter, signed by William F. Jerome, who was assistant treasurer of that company, to the Pennsylvania department of highways, as follows:
"Please forward our semi final estimate check on our Clarion-Venango County contract R. — 75 Appl. 4788 to us in care of The Commercial Casualty Co., 720 Grant Bldg., Pittsburgh, Penna."
On August 3d 1929, the division engineer of Pennsylvania certified to semi-final estimates on that contract in the sums of $2,868.83 and $16,175.41, which were afterward certified for payment, approved, audited, and issuance of checks authorized for the same, and on August 22d, Commercial filed application for release of bond on the Clarion and Venango contract with the department of highways of Pennsylvania, and on August 28th, 1929, the treasurer of Pennsylvania issued two checks payable to Eastern States in payment of the semi-final estimates. The check for $2,868.83 was deposited to the credit of Eastern States in New First National Bank of Meadeville, and collected, and the check for $16,175.41 was mailed to Eastern States, care of Commercial Casualty Insurance Company, 720 Grant Building, Pittsburgh, Pennsylvania, and received by William F. Jerome, assistant secretary and treasurer of Eastern States, and deposited to the credit of Eastern States in the Farmers and Merchants Bank at Bridgeton, New Jersey, and Eastern States then delivered to Commercial its checks in payment of the bills and charges aggregating $15,593.10 to which reference has been made.
On September 25th, 1929, Eastern States made another *Page 374 
written application and agreement with Commercial, and a bond was executed to the county of Indiana, Commonwealth of Pennsylvania, with Eastern States as principal and Commercial as surety, in accordance with the application and the written agreement relating to the building of a road referred to as the "Indiana county contract."
On September 19th, 1929, there was due to McDonald Construction Company for labor and materials, $12,370.43, representing the amount finally agreed in settlement of its claim on the Clarion and Venango contract, and Commercial received on that contract, $19,677.84; and there was also due for labor and materials furnished in connection with the West Meade township contract, $12,929.20, and Commercial received $10,039.24; there was due on the Vernon-Hayfield contract, $35,711.48; and on both the Vernon-Hayfield and West Meade township contracts, not allocated as between them, $10,422.86, and Commercial received thereon the sum of $23,719.65; and on that same date all work to be done and materials to be furnished on said three contracts, had been done and furnished.
After that date, Pennsylvania, by its checks, all payable to the order of Eastern States, afterwards endorsed over to Commercial by Eastern States in the manner as shown on such checks, paid the final estimates on each of these contracts, and the bills and charges were paid therefrom to the extent of the final estimate payments on them, and the balance thereof was paid by Commercial. On September 19th, 1929, said William F. Jerome sent a written request to the department of highways of Pennsylvania, which reads as follows:
"Please accept this as an order to forward our final check to us on the construction of Clarion-Venango County, R-75, Application 4788, to us in care of the Commercial Casualty Insurance Company, 720 Grant Building, Pittsburgh, Pennsylvania."
On September 24th, 1929, Eastern States borrowed from Bridgeton Bank $10,000, giving its note payable on demand, which note was protested on August 15th, 1930, and upon which there remains due the sum of $10,000 together with *Page 375 
protest fees and interest, and with the giving of the note Eastern States executed and delivered to Bridgeton Bank a written instrument which is termed an assignment, and by which it assigned, transferred and set over to Bridgeton Bank the balance then due Eastern States from the highway department of Pennsylvania under the Clarion and Venango contract, subject to the understanding that upon the repayment of the said loan made upon the consideration of the assignment, the balance when paid, after deducting principal and interest on said loan of $10,000, should be refunded and paid to Eastern States. The resolution of the board of directors of Eastern States recited in the assignment was adopted March 2d 1929.
On January 4th, 1930, the division engineer of Pennsylvania certified two final estimates on the Clarion and Venango contract in the sums of $2,328.21 and $17,349.63, which estimates were duly certified and approved, warrants issued, and checks of the treasurer of Pennsylvania, dated February 10th, 1930, for said sums respectively in final payment for all the work done by Eastern States on said Clarion and Venango contract, were sent by mail to "Eastern States Const. Co., c/o Commercial Cas. Ins. Co., 720 Grant Bldg., Pittsburgh, Pa.," which checks arrived at such address on or about February 10th, 1930. Both checks were endorsed as follows:
"For deposit only in the First National Bank at Pittsburgh, Pennsylvania, to the credit of the Commercial Casualty Insurance Company, Bond Account.
EASTERN STATES CONSTRUCTION COMPANY By Wm. F. Jerome. COMMERCIAL CASUALTY INSURANCE COMPANY Bond Account By H.S. Hays, Attorney in Fact."
And the signature of "Wm. F. Jerome" on these endorsements is the signature of William F. Jerome, the assistant secretary and treasurer of Eastern States. These checks were collected by First National Bank at Pittsburgh from Corn Exchange National Bank and Trust Company in Philadelphia, *Page 376 
and the full amount credited by the former bank to the Commercial bond account.
On March 28th, 1930, Bridgeton Bank sent a letter to Commercial, which letter was the first communication, either oral or written, received by Commercial from Bridgeton Bank or from any officer or employe of Bridgeton Bank. This letter notified Commercial that Eastern States had borrowed from Bridgeton Bank on September 24th, 1929, $10,000, and had given a demand note therefor and the written instrument or assignment to which reference has been made, and enclosed to Commercial copies of the note, the resolution of Eastern States giving authority to borrow, and of the written instrument or assignment used as collateral.
At the time the $10,000 was borrowed from Bridgeton Bank by Eastern States, Jerome was present in Bridgeton and he testified that he telephoned Mr. Hays, the assistant manager of Commercial, telling him of this loan and of this assignment executed as collateral, and that he also wrote him a letter to that effect. His testimony was that the letter was written in long hand from the Penn-Harris Hotel in Harrisburgh, of which he retained no copy. While the receipt of such a letter and telephone call is denied by Mr. Hays, I am inclined to believe that Mr. Hays was informed by Mr. Jerome of this loan, and through him, Commercial had information about it shortly after the loan was made, and in reaching this conclusion I have taken into consideration the fact that checks drawn by Eastern States in payment of bills had been, prior to that time, returned unpaid by Bridgeton Bank on account of insufficient funds, and Mr. Hays knew about them and was interested in having these checks made good, as well as considered a letter which Jerome wrote to Commercial on January 31st, 1930, at which time Eastern States owed more than the money it would receive on one or more of the contracts other than the Clarion and Venango contract, and stating in the letter that the final estimate on the latter contract would be received in a few days and on receipt of it Commercial should apply it to these accounts except the amount owed the McDonald Construction Company. *Page 377 
At the time of the writing of the letter from Bridgeton Bank to Commercial, Commercial had not disbursed the moneys deposited in its bond account, being the balance on the Clarion and Venango contract. Subsequently, Commercial received all the moneys due on various other contracts to which reference has been made, and upon which it was surety on the bonds of Eastern States, and disbursed the funds and applied the excess of $7,307.41 which it had in its hands, which came from the Clarion and Venango contract, to its losses incurred on the remaining contracts upon which it was surety, claiming the right to apply this excess from the Clarion and Venango contract because of the provisions of the agreement and application for bond in connection with that contract, as well as the order given by Jerome, dated September 19th, 1929, to the department of highways with reference to the mailing of the checks. Commercial contends that these were assignments and were prior to any claim which Bridgeton Bank had under its assignment of September 24th, 1929.
The provisions of the application and agreement in connection with the surety bond given under the Clarion and Venango contract between Eastern States and Commercial, so far as they affect the matters in dispute in this cause between Commercial and Bridgeton Bank are:
"3rd. That the undersigned will at all times indemnify and keep indemnified, the Company, and hold and save it harmless from and against any and all liability, damages, loss, costs, charges and expenses of whatever kind or nature, including counsel and attorney's fees, which the Company shall or may, at any time, sustain or incur by reason or in consequence of having executed the bond herein applied for, or by reason or in consequence of the execution by the company of any and all other bonds executed, for us at our instance and request, and that we will pay over, reimburse and make good to the Company, its successors and assigns all sums and amounts of money which the Company or its representatives shall pay, or cause to be paid, or become liable to pay, on account of the execution of any such instrument, and on account of any liability, damage, costs, charges and expenses of whatsoever kind or nature, as well, also, in connection with any litigation, investigation, collecting any premium due or losses sustained or other matters connected therewith, including counsel and attorney's fees, such payment to be made to the Company as soon as it shall have become liable therefor, whether the Company shall have paid said sum or any part therof or not. *Page 378 
That in any accounting which may be had between the undersigned and the Company, the Company shall be entitled to credit for any and all disbursements in and about the matters herein contemplated, made by it in good faith under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether such liability, necessity, or expediency existed or not.
"4th. That in the event of the failure of the undersigned to comply with or make due performance of any covenant hereof, the Company may at any time thereafter take such steps as it may deem necessary or proper to obtain its release from all liability under any and every such bond, and to secure and further indemnify itself against loss and all damage and expense which the Company may sustain or incur, or be put to in obtaining such release, or in further securing itself against loss, shall be borne and paid by the undersigned.
"5th. That for the better protection and security of the Company, the undersigned, as of the date hereof, hereby assigns, transfers and conveys to the Company all the right, title and interest of the undersigned in and to all the supplies, tools, plant, equipment and materials of every nature and description that he or it may now or hereafter have upon said work, or in, or on, about the site thereof, and also all materials purchased for or chargeable to the said contract which may be in process of manufacture or construction, or in transportation, or in storage elsewhere, and also all his or its right in and to all subcontracts relating to said work which have been or may hereafter be made, together with the materials embraced therein, and as well all the rights, title and interests of the undersigned in and to all bonds executed to the undersigned securing the performance by said subcontractors of subcontracts, hereby subrogating said Company to all such rights, title and interests of the undersigned therein; and the undersigned does hereby authorize and empower the Company, its authorized agents or attorneys, to enter upon and take possession of said supplies, tools, plant, equipment, materials, and subcontracts, and enforce, use and enjoy the title thereto and the possession thereof in the event of any default on the part of the undersigned in the performance of the contract hereinabove referred to or in the payment of the premiums above mentioned.
"6th. That in further consideration of the execution of said bond, the undersigned hereby assigns, transfers and conveys to the Company all the deferred payments and retained percentages, and any and all moneys and properties that may be due and payable to the undersigned at the time of any breach or default in said contract, or that thereafter may become due and payable to the undersigned on account of said contract, or on account of extra work or materials supplied in connection therewith, hereby agreeing that such money, and the proceeds of such payments and properties shall be the sole property of the Company and to be by it credited upon any loss, cost, damage, charge and expense sustained or incurred by it under said bond. *Page 379 
"7th. That in the event the Company is required to reserve from its assets an amount to cover any contingent claim or claims under the bond herein applied for, by reason of default of the undersigned, abandonment of contract, liens filed, dispute with the owner or obligee, or for any other reason whatsoever, the undersigned hereby covenants and agrees to immediately on demand deposit with the Company, in current funds, an amount sufficient to cover any such contingent claim or claims, as a trust fund or collateral security, to be held by the Company as indemnity on the bond herein applied for, in addition to the indemnity afforded by this instrument; and if the Company is required to enforce performance of this covenant by action at law or in equity, the costs, charges and expenses, including counsel or attorney's fees, which it may thereby incur, shall be included in such action and paid by the undersigned.
"11th. That these covenants and also all collateral security, if any, at any time deposited with the Company concerning the said bond or any other former or subsequent bonds, executed for the undersigned or at its instance, shall, at the option of the Company, be available in its behalf and for its benefit as well concerning the bond or undertaking hereby applied for, as also concerning all other former or subsequent bonds and undertakings executed for us or for others at our request."
There was no default by Eastern States under the Clarion and Venango contract. There was full performance of this contract by Eastern States prior to the assignment from Eastern States to Bridgeton Bank, and the Commonwealth of Pennsylvania had no interest in the retention of any of the moneys due Eastern States after the bond had been released and provision made for full payment of labor done and materials furnished thereunder. The contract between Eastern States and Commonwealth of Pennsylvania contained the provision that the contractor should not assign the contract or the right to any of the moneys to be paid thereunder, but that provision must be construed to have been placed therein for the benefit and protection of the commonwealth, and the commonwealth's interest having ceased, the assignability of the moneys due Eastern States thereunder as between Bridgeton Bank and Eastern States is not affected and the consent of the commonwealth was not necessary to make such assignment valid.Portuguese-American Bank v. Welles, 242 U.S. 7; 61 L.Ed. 116;Burnett v. Jersey City, 31 N.J. Eq. 341; United States Fidelityand Guaranty Co. v. Newark, 76 N.J. Eq. 230. *Page 380 
The right of Commercial to appropriate the overplus from the Clarion and Venango contract to make up its losses on the subsequent contracts on which it was surety, depends largely upon the construction to be given to the application and agreement for this bond.
Paragraph 6 in effect assigns to Commercial moneys that may be due and payable to Eastern States at the time of any breach or default on said contract, the same to be credited upon any loss, cost, damage, charge or expense sustained or incurred by it under said bond.
Under paragraph 3, Eastern States agrees to indemnify and keep indemnified Commercial against all liability, c., which it may sustain by reason of having executed this bond or by reason of or in consequence of the execution by Commercial of any and all other bonds executed.
As I read these provisions, I must reach the conclusion that this agreement cannot be construed to relate to bonds executed subsequently to this one, but only to the bond therein applied for and any others theretofore executed, unless paragraph 11 should be construed to enlarge the meaning and scope of paragraph 6. Paragraph 11 makes available to Commercial all collateral security deposited concerning the bond in question or any former or subsequent bonds for its benefit, as well concerning this bond as all other former or subsequent bonds executed, but at the option of Commercial. No securities were deposited with this bond, and there being no default by Eastern States under the contract making Commercial liable on this bond, there was neither right nor occasion for Commercial to exercise any option in behalf of this bond. The obtaining of the checks representing the final payment under this contract in the manner in which they were obtained, cannot be construed to be collateral security as contemplated under this clause. The use of the word "covenants" in that paragraph relates to the covenants set forth in the application and agreement, and its use in this paragraph 11 cannot be construed to enlarge the provisions contained in the third paragraph so as to make those provisions applicable to bonds subsequently executed. *Page 381 
Commercial having filed the application for release of bond with the Commonwealth of Pennsylvania, after having satisfied itself that there was sufficient moneys due from the commonwealth to pay for all bills for labor done and materials furnished under said contract, then obtained from Eastern States, through Jerome, the orders to have the checks mailed to Eastern States in its care. There were two of these letters written; as a result of the first one, the checks received, as I have stated, were deposited to the credit of Eastern States and the bills then due paid therefrom by checks drawn from the Eastern States and signed by the president and assistant treasurer. Under the second order which was dated September 19th, 1929, the checks, together with the envelope directed to Eastern States, care of Commercial, naturally came into the hands of Commercial. As I view it, the effect of such order was merely to enable Commercial to know when the checks reached Eastern States and to see that the proceeds of such checks were applied to the payment of labor and materials on the Clarion and Venango contract which at that time were represented by the one claim of McDonald Construction Company. The mere receipt of these checks in the manner in which they were received could not be determined to be an assignment by Eastern States to Commercial, because Commercial could not use such checks without a proper endorsement by Eastern States. The method which Commercial used was to have Jerome endorse these checks in the manner to which reference has been made, and then cause them to be deposited in the bond account of Commercial. This attempted transfer from Eastern States to Commercial, of the entire amount of these checks, thus enabling Commercial to appropriate the overplus after the payment of the McDonald Construction Company bill, to losses suffered by it on subsequent bonds, was ineffective. There was no authority then vested in Jerome, whether he endorsed the check in his official capacity as assistant treasurer, or merely as an individual as happened in this case, to transfer this entire fund to Commercial. Bridgeton Bank has not denied the right of Commercial to *Page 382 
pay out of these moneys thus obtained, the bill of McDonald Construction Company. The evidence in the cause discloses that the active officers of Eastern States in its road building operations were W.H. Williams, who was president, and William F. Jerome, who was assistant secretary and treasurer. These officers had charge of the contracts, and to a large extent the financial operations of the company relating thereto, but in no previous case, so far as the evidence discloses, did Jerome transfer the moneys of the company without the signature of the president or vice-president, which practice was known to Commercial by reason of its dealings with Eastern States and its receipt of a number of checks drawn to it, as well as the inspection of checks to creditors passing through its hands, all of which were signed by the president or vice-president and treasurer or assistant treasurer of Eastern States. There was no authority given, so far as the minutes of Eastern States show, to Jerome to transfer a check by his endorsement alone, but on the other hand the resolution of Eastern States authorizing the withdrawal of funds, provided for the signature of the president or vice-president and treasurer or assistant treasurer, and there was no course of conduct on the part of Jerome that would give him the right to transfer the moneys of the company by the endorsement of a check over to another without the concurrence at least of the president or vice-president, so that the transfer of this money, represented by these two checks, from Eastern States to Commercial, was unauthorized. Commercial had the right to require the payment of $12,370.43 to McDonald Construction Company, but had no right to appropriate the balance to other purposes than payment of bills on the Clarion and Venango contract as against Bridgeton Bank which had an assignment of these moneys.
My conclusion is that Bridgeton Bank is entitled to a decree against Commercial for the sum of $7,307.41, with interest, representing the amount of money of Eastern States which Commercial received over the amount necessary to pay the bill of McDonald Construction Company on the Clarion and Venango contract. *Page 383